**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

THEDRAL R. HARDRIDGE,

  Defendant-Appellant.

No. 07-3264

District of Kansas

(D.C. No. 06-CV-03220-CM)
(D.C. No. 02-CR-20003-CM)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **BRISCOE**, **EBEL** and **McCONNELL**, Circuit Judges.

---

Petitioner Thedral R. Hardridge, a federal prisoner proceeding *pro se*, seeks a certificate of appealability (COA) that would allow him to appeal from the district court's order denying his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c)(1)(B). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because we conclude that Mr. Hardridge has failed to make "a substantial showing of the denial of a constitutional right," we deny his request for a COA and dismiss the appeal. 28 U.S.C. § 2253(c)(2).

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

# I. BACKGROUND

On November 11, 2002, a Kansas City, Kansas police officer stopped Thedral Hardridge's BMW on an outstanding warrant, saw a firearm and ammunition in the vehicle, and arrested him. He was released on bond, but two days later he shot himself in the mouth. Police responding to a subsequent domestic disturbance call recovered the firearm he had used and two others. Consequently, Mr. Hardridge was charged by indictment with three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), and two counts of knowingly making a false statement (that he had no prior felony conviction) in connection with the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6). On December 4, 2003, after a bench trial, Mr. Hardridge was found guilty. He was sentenced to five concurrent terms of 88 months' incarceration. We affirmed on direct appeal. *United States v. Hardridge*, 379 F.3d 1188, *on reh'g in part*, 149 F. App'x 746 (10th Cir. 2005). Mr. Hardridge then filed a motion in the district court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging that his waiver of a jury trial was invalid and that he had received ineffective assistance of counsel. The district court denied his motion on July 18, 2007, and Mr. Hardridge timely brought this petition and appeal.

# II. DISCUSSION

On appeal, Mr. Hardridge argues (1) that his counsel was ineffective, and (2) that the district court should not have accepted his jury trial waiver. On the issue of ineffectiveness, he charges that (a) his counsel should have known that Mr. Hardridge

-2-

was incompetent to make a knowing and voluntary waiver, (b) his counsel failed to research the case adequately, to locate and interview certain witnesses, or to file pretrial motions, (c) his counsel failed to ensure that the jury trial waiver was in writing, (d) his counsel should not have chosen a bench trial in light of his defense theory, and (e) his counsel failed to challenge Mr. Hardridge's prior conviction as unconstitutional. On the propriety of the jury trial waiver, Mr. Hardridge argues that the waiver was invalid because (a) it was not in writing, and (b) he was not competent to stand trial or to make a knowing and voluntary waiver of his jury trial right. He also argues that the district court should have granted an evidentiary hearing in this § 2255 petition.

We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004). The claim of ineffective assistance of counsel presents a mixed question of fact and law, which we also review *de novo*. *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006). On account of Mr. Hardridge's *pro se* status, we construe his submissions liberally. *See, e.g.*, *de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007).

## A. Assistance of Counsel

To succeed on a claim of ineffectiveness of counsel, a petitioner must show both "that counsel's representation fell below an objective standard of reasonableness" when compared to "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

-3-

First, Mr. Hardridge argues that his counsel was ineffective for failing to raise the issue whether he was competent to make a jury trial waiver knowingly and voluntarily. Mr. Hardridge urges that the incident in which he shot himself was a suicide attempt "indicative of some sort of deep mental and emotional disturbance," R., Vol. I, Doc. 109, at [6, ] 16, and that his resulting physical disfigurement "only exacerbated the[se] mental and emotional problems." *Id.* at 17. He admits that he has "no long history of . . . mental problems," but writes that "this case began with his failed attempt at suicide from a gunshot wound through the mouth and up through his head. What further proof does one need to convince him/her that the defendant is suffering some sort of mental affliction?" *Id.* at 27. He also argues that the fact that three defense attorneys sought to withdraw from representing him demonstrates that he was not capable of rationally communicating with them.

A defendant is competent to waive his right to a jury trial if he has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006) (quoting *Godinez v. Moran*, 509 U.S. 389, 398 (1993)); *accord United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000). For purposes of argument, we accept the self-inflicted shooting as a suicide attempt. However, there is nothing to indicate that a lone suicide attempt, taking place two days after being arrested with an illegally possessed firearm and a year before trial, could establish a defendant's incompetency. "[A] suicide attempt need not always

-4-

signal 'an inability to perceive reality accurately, to reason logically and to make plans and carry them out in an organized fashion.'" *Drope v. Missouri*, 420 U.S. 162, 181 n.16 (1975) (quoting David F. Greenberg, *Involuntary Psychiatric Commitments to Prevent Suicide*, 49 N.Y.U. L. Rev. 227, 236 (1974)).  Nothing in the record suggests such an inability, or that Mr. Hardridge lacked a rational and factual understanding of the proceedings against him.

The district judge in this case observed Mr. Hardridge throughout the proceedings and at trial, and found that he "was lucid at all times." R., Vol. I, Doc. 117, at 5.  Mr. Hardridge's testimony reflects that he understood the nature of the charges against him and was able to participate in the case:

> Q:    Was it your intent to violate the federal firearms laws by purchasing firearms in October and November of 2001?
> A:    No.
> Q:    Was it your intent to violate the federal firearms laws by possessing firearms in 2001?
> A:    No.
>                              .    .    .
> Q:    If you had been told that the sale of the firearm couldn't proceed—
> A:    Then I wouldn't be here.

*Id.* (quoting Dist. Dkt. Doc. 95, at 125–26).

Furthermore, the district court found that the attorneys' attempts to withdraw from representing Mr. Hardridge resulted not from an inability to communicate but "from petitioner's allegations of unprofessional conduct and a difference in opinion of how the case was being, and should be, handled." *Id.*  Mr. Hardridge puts forward nothing to rebut or challenge these conclusions.  Notably, he has offered no affidavit to show a

-5-

difficulty in communicating, nor does any of his filings allege such a difficulty in but the most cursory terms.

For these reasons, well explained at greater length by the district court, Mr. Hardridge has not established that prejudice, "a reasonable probability that . . . the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, resulted from his attorneys' failure to raise the issue of his competency to make a waiver of his right to a jury trial. *See Hatch v. State of Okla.*, 58 F.3d 1447, 1458 (10th Cir. 1995) (no prejudice could be shown from failure to challenge competency where petitioner "testified before the trial that he understood the information and the nature of the charge, and his testimony during the trial about the crime and his responsibility was lucid and intelligible," and where he "does not point to any evidence that would show that he fell below" the standard of competency), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001). We therefore need not address the district court's alternative holding that these facts did not establish a constitutionally deficient performance on the part of Mr. Hardridge's attorneys.

We may similarly reject the claim based on the charge that the attorneys failed to file motions for discovery of the medical records from the hospital where Mr. Hardridge was taken after the shooting or to subpoena and interview the hospital staff who treated him. Mr. Hardridge asserts that "emergency medical staff at the hospital scheduled him for appointments with the mental health care department of the hospital." R., Vol. I, Doc. 109, att., at 30. But the mere scheduling of an appointment could not have established

incompetency, and Mr. Hardridge has averred neither that any mental examination ever took place, nor that its results would have tended to show his incompetency. Accordingly, he has not established prejudice on this issue either.

Next, Mr. Hardridge urges that his attorneys were ineffective for failing to ensure that his waiver of the jury trial right was in writing. Again, no prejudice can be shown from the omission, because, although Rule 23(a)(1) of the Federal Rules of Criminal Procedure mandates that such a waiver be in writing, this requirement is a matter more of "form" than "substance," and we have found "no practical justification for finding a waiver invalid simply because" of the absence of a writing. *United States v. Robertson*, 45 F.3d 1423, 1431 (10th Cir. 1995).

Fourth, Mr. Hardridge asserts that his trial counsel was ineffective for waiving the right to a jury trial in light of the proffered defense of "entrapment by estoppel." At trial, Mr. Hardridge's defense established that his 1995 felony conviction was never entered into the National Crime Information Center's database, and that when he requested his criminal record from the Kansas City, Kansas, Police Department, the check came back, "no records found." *Hardridge*, 379 F.3d at 1191. When employees at a gun store ran a background check before selling firearms to Mr. Hardridge, they were instructed that the sale could proceed. *Id.* So, although Mr. Hardridge admitted at trial that he had purchased firearms—and in so doing had stated that he had never been convicted of a felony—he argued that "the actions of several actors representing various government entities misled him into believing that it was legal for him to purchase and possess

-7-

firearms, thereby estopping the government from prosecuting him on the unlawful-possession counts." *Id.* at 1192.

In the context of a technical defense where few facts are in dispute, electing to argue to a judge rather than a jury is an eminently plausible defense strategy: counsel might plausibly reason that a judge would be more willing than twelve of Mr. Hardridge's peers to acknowledge that he did the things alleged but acquit him nevertheless for purely legal reasons. We therefore cannot regard counsel's decision to waive jury trial on this issue constitutionally deficient.

As a final allegation of ineffectiveness, Mr. Hardridge contends that his counsel improperly failed to challenge the use of his prior conviction, a 1995 Kansas felony conviction of two counts of aggravated battery for shooting two people, as a predicate for the felon-in-possession charges in this case under 18 U.S.C. § 922(g)(1). Mr. Hardridge claims that the 1995 conviction was invalidly obtained because he received ineffective assistance in that case, and that counsel in his firearm case should somehow have attacked the conviction so that he would not be considered a felon. This argument is meritless because it is settled that the infirmity of a prior felony conviction—so long as that conviction stands on the books—is immaterial to felon-in-possession liability under § 922(g)(1). *See, e.g.*, *United States v. Coleman*, 458 F.3d 453, 456 (6th Cir. 2006); *United States v. Leuschen*, 395 F.3d 155, 157 (3d Cir. 2005); *United States v. Padilla*, 387 F.3d 1087, 1090–91 (9th Cir. 2004); *Burrell v. United States*, 384 F.3d 22, 27–28 (2d Cir. 2004); *United States v. Wallace*, 280 F.3d 781, 784 & n.1 (7th Cir. 2002). As the

Supreme Court has held, the "plain meaning" of a statute disabling a person who has been "convicted" of a felony from owning a firearm "is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury." *Lewis v. United States*, 445 U.S. 55, 60–61 (1980).

## B. Propriety of Jury Trial Waiver

Mr. Hardridge argues that the absence of a written waiver of his right to a trial by jury, in violation of Rule 23(a)(1) of the Federal Rules of Criminal Procedure, makes the waiver invalid. We agree with the district court that this claim was procedurally waived because Mr. Hardridge neglected to object to the absence of a writing at the time and failed to raise the issue on direct appeal. Were we to consider the claim, moreover, we would find it without merit. *See United States v. Robertson*, 45 F.3d 1423, 1431 (10th Cir. 1995).

Mr. Hardridge further contends that the trial court "erred in accepting [his] jury trial waiver and should not have allowed [him] to stand trial because he was incompetent to do so." COA Petn. 2. This raises what has been called a procedural competency challenge: where a defendant did not challenge his competency or request a hearing on the matter, the procedural question is whether the court should have ordered a hearing *sua sponte*. To prevail, he must establish, at minimum, "'that the . . . trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial.'" *Walker v. Att'y Gen. for State of Okla.*, 167 F.3d 1339, 1343 (10th Cir. 1999) (quoting *Medina v.*

*Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)) (further quotation omitted); *see United States v. Herrera*, 481 F.3d 1266, 1271–72 (10th Cir. 2007). Failure to hold a hearing despite such a doubt establishes a rebuttable presumption of the defendant's incompetency. *Medina*, 59 F.3d at 1106. We have reviewed Mr. Hardridge's complete trial testimony, as well as his oral waiver of his jury trial right. From the transcripts, he comes across as intelligent, aware, and in full command of his senses. The district judge, who observed and interacted with him at length in person, agreed. Nothing before the trial court suggested that Mr. Hardridge lacked "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' [or] 'a rational as well as factual understanding of the proceedings against him.'" *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006) (quoting *Godinez v. Moran,* 509 U.S. 389, 398 (1993)). To the contrary, in hearings on two of his attorneys' motions to withdraw from representing him, Mr. Hardridge's testimony reveals that he communicated regularly with his attorneys and understood what they were doing and how they were trying to defend him, but was dissatisfied with their performance and accused them of unprofessional conduct. These facts did not establish a "bona fide doubt" whether Mr. Hardridge was competent to waive his right to a trial by jury.

## C. Evidentiary Hearing

Denial of an evidentiary hearing is reviewed for abuse of discretion. *United States v. Clingman*, 288 F.3d 1183, 1187 n.4 (10th Cir. 2002). Here, the district court denied the request for an evidentiary hearing despite Mr. Hardridge's vague, conclusory assertion

that "an evidentiary hearing is needed in order for Mr. Hardridge to prove his claims and for the court to make a fair assessment of the facts before it can render a fair decision with regard to this [competency] issue." R., Vol. I, Doc. 109, att., at 10. We agree with the district court that the issues presented by Mr. Hardridge's § 2255 motion could be resolved on the basis of the record evidence.

## III. CONCLUSION

We do not find that Mr. Hardridge "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, we **DENY** Mr. Hardridge's request for a certificate of appealability and **DISMISS** this appeal.

Judge Briscoe concurs in the result of this Order.

Entered for the Court,


Michael W. McConnell
Circuit Judge